**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1651**

ROBERT C. CAHALY,

    Plaintiff – Appellee,

  v.

PAUL C. LAROSA, III; REGINALD I. LLOYD; SOUTH CAROLINA LAW
ENFORCEMENT DIVISION,

    Defendants – Appellants.

**No. 14-1680**

ROBERT C. CAHALY,

    Plaintiff – Appellant,

  v.

PAUL C. LAROSA, III; REGINALD I. LLOYD; SOUTH CAROLINA LAW
ENFORCEMENT DIVISION,

    Defendants – Appellees.

Appeals from the United States District Court for the District
of South Carolina, at Greenville.  J. Michelle Childs, District
Judge.  (6:13-cv-00775-JMC)

Argued: March 25, 2015    Decided:  August 6, 2015

Before WYNN, DIAZ, and THACKER, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn and Judge Thacker joined.

---

**ARGUED:** Kenneth Paul Woodington, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellants/Cross-Appellees. Samuel Darryl Harms, III, HARMS LAW FIRM, PA, Greenville, South Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Robert D. Cook, Solicitor General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina; William H. Davidson, II, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellants/Cross-Appellees.

---

DIAZ, Circuit Judge:

Robert C. Cahaly, a self-described Republican political consultant, was arrested for alleged violations of South Carolina's anti-robocall statute. After the charges were dismissed, Cahaly filed suit, challenging the statute on three First Amendment grounds: as an unlawful regulation of speech, as impermissibly compelling speech, and as unconstitutionally vague. Cahaly also sought damages from the law enforcement officials involved in his arrest (and the agency employing them), advancing claims under 42 U.S.C. § 1983 and state law for false imprisonment and malicious prosecution.

Under the content-neutrality framework set forth in Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015), we find that the anti-robocall statute is a content-based regulation that does not survive strict scrutiny.[1] We also hold that Cahaly lacks standing to bring compelled-speech and vagueness challenges, and that his other claims fail due to the presence of probable cause to arrest him. As a result, we affirm the district court's judgment except for the compelled-speech claim, which we vacate and remand with instructions to dismiss it.

---

[1] We received supplemental briefs from the parties on the import of Reed to the issues on appeal.

I.

A.

In 1991, the South Carolina General Assembly enacted a statute regulating automated telephone calls that deliver recorded messages, or "robocalls."[2] This statute places different restrictions on robocalls depending on whether they are (1) unsolicited and (2) made for consumer, political, or other purposes. By definition, it prohibits only those robocalls that are "for the purpose of making an unsolicited consumer telephone call" or are "of a political nature including, but not limited to, calls relating to political campaigns." S.C. Code Ann. § 16-17-446(A).

All qualifying robocalls are banned with three exceptions, based on the express or implied consent of the called party:

> (1) in response to an express request of the person called; (2) when primarily connected with an existing debt or contract, payment or performance of which has not been completed at the time of the call; (3) in response to a person with whom the telephone solicitor has an existing business relationship or has had a previous business relationship.

Id. § 16-17-446(B). If an exception applies, the permitted robocall must "disconnect immediately when the called party hangs up"; must be made between 8:00 AM and 7:00 PM; and "may

---

[2] The statute refers to robocalls as "Adad calls," which stands for "automatically dialed announcing device." S.C. Code Ann. § 16-17-446 (2014).

not ring at hospitals, police stations, fire departments, nursing homes, hotels, or vacation rental units." Id. § 16-17-446(C)(2)-(4). Some permitted robocalls must also disclose certain information to the called party: "(1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; [and] (3) the nature of the goods or services." Id. §§ 16-17-445(B)(1)-(3), -446(C)(1).

Other statutory provisions contain rules for live solicitors making unsolicited consumer telephone calls. Solicitors must place their calls from 8:00 AM and 9:00 PM, make certain disclosures, and maintain a do-not-call list. Id. §§ 16-17-445(B)-(E).

A violation of the statute constitutes a misdemeanor offense. Id. § 16-17-446(D) (cross-referencing § 16-17-445(F)). A first or second conviction carries a maximum punishment of a $200 fine or 30 days in prison while a third or later conviction carries a fine of $200 to $500 or the same maximum 30 days' imprisonment. Id.

### B.

On September 23, 2010, Cahaly allegedly placed robocalls in six South Carolina house legislative districts. With the name changed to reflect the Democratic candidate in each district, the calls' prerecorded message said:

Please hold for a one-question survey.

5

> As you may have heard, Speaker of the House Nancy Pelosi is coming to South Carolina.
>
> Do you think incumbent Democrat Anne Peterson Hutto should invite her fellow Democrat Nancy Pelosi to come campaign for her?
>
> Press 1 if you think incumbent Democrat Anne Peterson Hutto should invite her fellow Democrat Nancy Pelosi to come and campaign for her.
>
> Press 2 if you think incumbent Democrat Anne Peterson Hutto should not invite her fellow Democrat Nancy Pelosi to come and campaign for her.

J.A. 219-20.

About one week before the calls were placed, an attorney with the South Carolina Office of the Attorney General told Cahaly that the anti-robocall statute did not cover "automated telephone survey polls of a political nature." J.A. 74. The attorney encouraged him to ask a member of the state House of Representatives to seek a written opinion to that effect. A representative made that request, and the Attorney General issued a letter, the day before Cahaly made the robocalls, stating:

> In the opinion of this office, organizations, such as Survey USA, may routinely conduct automated survey telephone calls for political purposes in this State that require the recipient's responses via a phone key. The purpose of the ADAD law is to prohibit the unwarranted invasion by automated dialing devices in order to promote advocacy of a "product" including a particular candidate. Thus, as long as these polling calls, even if they are of a political nature, do not advocate a particular political candidate but simply

6

>       obtain a "snapshot" opinion of a voter, they may be
>       made.

J.A. 83.

The day after Cahaly placed the robocalls, an incumbent seeking reelection in one of the targeted districts wrote to the South Carolina Law Enforcement Division ("SLED") reporting that her constituents had received telephone calls that violated the anti-robocall statute. Over the next three weeks, Democratic candidates in the other five districts also reported to SLED that their constituents had received the same calls using their names.

On November 1, 2010, a state magistrate judge issued six warrants--one for each targeted district--for Cahaly's arrest. The election was held November 2. That same day, SLED issued a press release announcing the warrants. On November 3, Cahaly turned himself in, was booked, and was released on his own recognizance. The warrants were dismissed eighteen months later.

## C.

Cahaly filed a complaint in state court against SLED; Paul C. LaRosa, III, a special agent with SLED who completed the arrest warrant applications; and Reginald I. Lloyd, the director of SLED at the time of Cahaly's arrest (collectively, the "Defendants"). Cahaly sought a declaration that the anti-

robocall statute was unconstitutional and an injunction prohibiting the Defendants from enforcing it. He also alleged a damages claim under 42 U.S.C. § 1983 and state law claims for false imprisonment and malicious prosecution.

The Defendants removed the case to federal court. Cahaly moved for partial summary judgment on his claim for declaratory and injunctive relief. The Defendants moved for summary judgment on all claims.

The district court granted Cahaly's motion, declared the anti-robocall statute unconstitutional, and issued a permanent injunction barring enforcement of the statute. The district court concluded that the statute was a content-based restriction on speech and applied strict scrutiny. Under that rubric, the court found the statute unconstitutional due to "its underinclusiveness and its singling out of commercial and political speech" when the asserted government interest was to eliminate nearly all robocalls to protect residential privacy. Cahaly v. LaRosa, 25 F. Supp. 3d 817, 827 (D.S.C. 2014). The court also determined that the statutory provision requiring robocalls to disclose certain identifying information was unconstitutional as compelled speech, but that Cahaly lacked standing to bring his vagueness challenge.

The district court awarded summary judgment to the Defendants on Cahaly's other claims. The court held that LaRosa

8

and Lloyd were entitled to qualified immunity on the § 1983 claim because the right at issue was not clearly established. The court also held that the existence of probable cause to arrest Cahaly defeated his false imprisonment and malicious prosecution claims.

The Defendants appeal the district court's judgment granting declaratory and injunctive relief. Cahaly cross-appeals the district court's judgment on his damages claims. We review de novo the district court's order granting summary judgment and its ruling that a party lacks standing. Brown v. Town of Cary, 706 F.3d 294, 300 (4th Cir. 2013).

II.

We begin with Cahaly's First Amendment claim. First, we consider whether the anti-robocall statute is a content-neutral restriction on speech subject to intermediate scrutiny or a content-based restriction that must withstand strict scrutiny. We then turn to whether the statute's mandatory disclosure provision constitutes compelled speech. Lastly, we reach Cahaly's vagueness challenge. As explained below, we hold that the statute is content based and does not survive strict scrutiny, and that Cahaly lacks standing to bring his compelled-speech and vagueness challenges.

9

A.

The Supreme Court recently clarified the content-neutrality inquiry in the First Amendment context. In Reed, the Court explained that "the crucial first step in the content-neutrality analysis" is to "determin[e] whether the law is content neutral on its face." 135 S. Ct. at 2228. At the second step, a facially content-neutral law will still be categorized as content based if it "cannot be '"justified without reference to the content of the regulated speech,"' or . . . adopted by the government 'because of disagreement with the message [the speech] conveys.'" Id. at 2227 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

This formulation conflicts with, and therefore abrogates, our previous descriptions of content neutrality in cases such as Brown v. Town of Cary. See 706 F.3d at 303 ("[I]f a regulation is 'justified without reference to the content of regulated speech,' [citation omitted] 'we have not hesitated to deem [that] regulation content neutral even if it facially differentiates between types of speech.'") (quoting Wag More Dogs, Ltd. Liab. Corp. v. Cozart, 680 F.3d 359, 366 (4th Cir. 2012) (last alteration in original)). Our earlier cases held that, when conducting the content-neutrality inquiry, "[t]he government's purpose is the controlling consideration." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 555 (4th

Cir. 2013) (quoting Ward, 491 U.S. at 791). But Reed has made clear that, at the first step, the government's justification or purpose in enacting the law is irrelevant. 135 S. Ct. at 2228-29.

Applying Reed's first step, we find that South Carolina's anti-robocall statute is content based because it makes content distinctions on its face. Reed instructs that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." 135 S. Ct. at 2227. Here, the anti-robocall statute applies to calls with a consumer or political message but does not reach calls made for any other purpose. Because of these facial content distinctions, we do not reach the second step to consider the government's regulatory purpose. See id. at 2228 ("[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral.")

As a content-based regulation of speech, the anti-robocall statute is subject to strict scrutiny. Id. at 2231. Under this standard, the government must prove "that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Id. (quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806, 2817 (2011)). "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." United

11

States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000). Moreover, the restriction cannot be overinclusive by "unnecessarily circumscrib[ing] protected expression," Republican Party of Minn. v. White, 536 U.S. 765, 775 (2002) (quoting Brown v. Hartlage, 456 U.S. 45, 54 (1982)), or underinclusive by "leav[ing] appreciable damage to [the government's] interest unprohibited," Reed, 135 S. Ct. at 2232 (quoting White, 536 U.S. at 780).

The asserted government interest here is to protect residential privacy and tranquility from unwanted and intrusive robocalls. Assuming that interest is compelling, we hold that the government has failed to prove that the anti-robocall statute is narrowly tailored to serve it. Plausible less restrictive alternatives include time-of-day limitations, mandatory disclosure of the caller's identity, or do-not-call lists. See Maryland v. Universal Elections, Inc., 729 F.3d 370, 376 (4th Cir. 2013) (evaluating the federal Telephone Consumer Protection Act's identity disclosure requirement); Nat'l Fed'n of the Blind v. F.T.C., 420 F.3d 331, 333-34 (4th Cir. 2005) (examining a federal regulation that "requires callers to make certain disclosures, refrain from making late-night, early-morning, and 'abandoned calls' (calls followed by silence), and comply with a . . . 'do-not-call list'"); Van Bergen v. Minnesota, 59 F.3d 1541, 1551 (8th Cir. 1995) (considering

12

Minnesota's ban on robocalls from 9 PM to 9 AM).  The government has offered no evidence showing that these alternatives would not be effective in achieving its interest.

In addition, the record contains evidence that the anti-robocall statute is overinclusive.  The Defendants themselves cite to a report from a U.S. House of Representatives committee that concluded, "Complaint statistics show that unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations."  H.R. Rep. 102-317, at 16 (1991).  Yet the statute also targets political calls.

At the same time, the statute suffers from underinclusiveness because it restricts two types of robocalls--political and consumer--but permits "unlimited proliferation" of all other types.  Reed, 135 S. Ct. at 2231; see id. ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town while at the same time allowing unlimited numbers of other types of signs that create the same problem.").

Because the statute does not pass muster under strict scrutiny, we affirm the district court's judgment declaring it unconstitutional.

B.

Turning to Cahaly's compelled-speech challenge, if robocalls are permitted because they fall within one of the

13

three exceptions listed in Section 16-17-446(B), then the statute requires those calls to disclose "(1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; [and] (3) the nature of the goods or services." S.C. Code Ann. § 16-17-446(C)(1) (cross-referencing § 16-17-445(B)(1)-(3)). The district court ruled that these mandatory disclosures unconstitutionally compel speech. The Defendants contend this ruling is in error due to the absence of a case or controversy, a jurisdictional prerequisite under Article III of the U.S. Constitution. We agree.

One requirement of Article III standing is that the plaintiff suffer an "injury in fact." Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). While "actual arrest or prosecution" for violating a statute establishes an injury in fact, Steffel v. Thompson, 415 U.S. 452, 459 (1974), so too may a "credible threat of prosecution thereunder." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).

As the Defendants note, Cahaly was not charged with violating Section 16-17-446(C)(1), the disclosure provision, despite the affidavits submitted to the magistrate judge alleging that Cahaly's robocalls "failed to promptly disclose in a clear and conspicuous manner to the receiver of the call the

14

identity of the originating party, endorsement of a candidate and or [sic] the nature of the call." J.A. 237-42. Rather, he was charged solely with violating Sections 16-17-446(A)-(B), which ban political robocalls outright. In addition, the affidavits do not allege any facts about Cahaly's relationship to the called parties, but the called parties' express or implied consent to being called is a necessary condition for the disclosure provision to apply. See S.C. Code Ann. § 16-17-446(B)-(C). Thus, federal jurisdiction hinges on whether Cahaly faces "sufficiently imminent" future arrest or prosecution. Driehaus, 134 S. Ct. at 2342.

The record contains no evidence to support this prerequisite to federal jurisdiction. In a declaration, Cahaly explains his "desire to conduct telephone survey polls in the future in the State of South Carolina of a political nature and telephone calls related to political campaigns." J.A. 73. But never does he allege his intention to make robocalls permitted by the statute, and therefore subject to the disclosure provision, by falling within one of the Section 16-17-446(B) exceptions.

As a result, Cahaly lacks standing to challenge the disclosure provision as compelled speech. We therefore vacate the district court's judgment on this claim, and remand with instructions to dismiss it.

15

C.

Regarding Cahaly's vagueness challenge, the district court ruled that he lacked standing to press it.  We agree.

"One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Parker v. Levy, 417 U.S. 733, 756 (1974).  Cahaly argues that the anti-robocall statute does not clearly apply to him because he made survey calls.  But he does not dispute that his robocalls were also "of a political nature," a category to which the statute expressly applies.  S.C. Code Ann. § 16-17-446(A).  Because the statute squarely covers Cahaly's calls, we affirm the district court's judgment dismissing his vagueness challenge.

III.

We turn to Cahaly's cross-appeal of his § 1983 and state law claims.  Because we find that probable cause supported his arrest for violating the anti-robocall statute, we affirm the district court's grant of summary judgment to the Defendants.

A.

Cahaly alleges that LaRosa and Lloyd violated § 1983 by arresting and prosecuting him in retaliation for his exercise of free speech.  He first argues that a genuine issue of material fact exists as to whether LaRosa had probable cause to arrest him.  We disagree.

16

A law enforcement officer who obtains an arrest warrant loses the protection of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (alteration in original) (quoting Malley v. Briggs, 475 U.S. 335, 344-45 (1986)). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Although we agree with Cahaly and the district court that the statute is unconstitutional, at the time of Cahaly's arrest, "there was no controlling precedent that [the statute] was or was not constitutional [and a] prudent officer [is not] required to anticipate that a court would later hold the [statute] unconstitutional." Id. at 37-38. Thus, our earlier holding has no bearing on whether LaRosa had probable cause when he arrested Cahaly.

Before making the arrest, LaRosa had statements from six witnesses describing the robocalls and a recording of one of the calls. Some of the witnesses also provided the telephone number of the caller, and a later investigation connected that number

17

to Cahaly as the president of the entity that paid for it. Moreover, one witness reported that the call "was not a real survey because pressing a button was not an option." J.A. 128.

LaRosa was also aware of the Attorney General's opinion letter stating that "automated survey telephone calls for political purposes" fell outside the anti-robocall statute. J.A. 83. However, we think that a reasonable officer could have determined that Cahaly's robocalls differed from those contemplated by the Attorney General based on the overtly political nature of the calls and one witness's view that the survey aspect was a sham. Even if that determination was wrong as a matter of law, officers may have probable cause to arrest based on "reasonable mistakes of law." Heien v. North Carolina, 135 S. Ct. 530, 536–37 (2014).

Cahaly contends that the arrest warrants are facially invalid because they include disclosure requirements that appear nowhere in the statute. The affidavits used to obtain the warrants allege that Cahaly "failed to promptly disclose in a clear and conspicuous manner to the receiver of the call the identity of the originating party, endorsement of a candidate and or [sic] the nature of the call." J.A. 237-42. But Section 16-17-446(C) only requires some robocalls to disclose "(1) the identity of the seller; (2) that the purpose of the call is to

sell goods or services; [and] (3) the nature of the goods or service." S.C. Code Ann. § 16-17-445(B)(1)-(3).

An arrest warrant is invalid only if the officer preparing the affidavit included a false statement with reckless disregard for its truth and, after that statement is redacted, "the affidavit's remaining content is insufficient to establish probable cause." Franks v. Delaware, 438 U.S. 154, 156 (1978). Even assuming that the disclosure requirements in the affidavits were false statements and that LaRosa acted with reckless disregard for their truth by including them, we still find probable cause based on the remaining content. The affidavits allege that Cahaly made robocalls of a political nature, and nothing more is required to violate the anti-robocall statute. Consequently, we affirm the district court's judgment that LaRosa and Lloyd are entitled to qualified immunity.[3]

---

[3] Cahaly also argues that the arrest warrant affidavits fail to include an essential element of the offense by not alleging that his robocalls included a prize promotion. Section 16-17-446(A) defines "'Adad' [to] mean[] an automatically dialed announcing device which delivers a recorded message without assistance by a live operator for the purpose of making an unsolicited consumer telephone call as defined in Section 16-17-445(A)(3)." The cross-reference takes readers to the definition for a "prize promotion" at Section 16-17-445(A)(3) while the definition for "unsolicited consumer telephone call" appears at Section 16-17-445(A)(4). According to Cahaly, this cross-reference should be interpreted literally, such that "unsolicited consumer telephone call" means "prize promotion."

(Continued)

19

From our conclusion that LaRosa had probable cause to arrest Cahaly, we quickly dispense with Cahaly's state law claims. Under South Carolina law, a claim for false imprisonment requires the plaintiff to demonstrate, in part, that "the restraint was unlawful." Law v. S.C. Dep't of Corr., 629 S.E.2d 642, 651 (S.C. 2006). "The fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest." Id. To state a claim for malicious prosecution, a South Carolina plaintiff must establish, among other things, "lack of probable cause." Id. at 648. Because Cahaly has not satisfied this element of the claims, we affirm the district court's judgment in favor of the Defendants.

---

We find that construction nonsensical and obviously contrary to legislative intent. The statute provides a definition for "unsolicited consumer telephone call" in the very next subsection. And as the Defendants point out, the legislative history shows that the cross-reference to prize promotion is a typographical error. As originally enacted, the definition of "unsolicited consumer telephone call" appeared at Section 16-17-445(A)(3). H.R. 3453, 107th Gen. Assemb. (S.C. 1988). The legislature later added a definition for "prize promotion" and bumped the definition for "unsolicited consumer telephone call" to the next subsection. In so doing, the legislature simply neglected to update the cross-reference in Section 16-17-446(A).

IV.

For the foregoing reasons, we affirm in part and vacate in part the district court's judgment, and remand the case with instructions to dismiss the compelled-speech claim.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS
