In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2059

PATRIOTIC VETERANS, INC.,

*Plaintiff-Appellant,*

*v.*

GREG ZOELLER, Attorney General of Indiana,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-723-WTL-MPB — **William T. Lawrence**, *Judge.*

ARGUED NOVEMBER 1, 2016 — DECIDED JANUARY 3, 2017

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Plaintiff, a veterans' group, contends that an anti-robocall statute, Ind. Code §24-5-14-5, violates the First Amendment to the Constitution, applied to the states by the Fourteenth Amendment. The Telephone Consumer Protection Act, 47 U.S.C. §227, which contains a similar limit, has been sustained by two circuits. See *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), affirmed on other grounds, 136 S. Ct. 663 (2016); *Van Bergen v. Minne-*

*sota*, 59 F.3d 1541, 1549–56 (8th Cir. 1995); *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995). The same circuits have approved state laws as well. See *Van Bergen* (sustaining a Minnesota law in addition to §227); *Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996) (California law). But relying on *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015), which found South Carolina's anti-robocall law to be unconstitutional, plaintiff maintains that *Reed v. Gilbert*, 135 S. Ct. 2218 (2015), made these decisions obsolete and dooms both state and federal anti-robocall statutes as instances of content discrimination. We disagree with that contention and conclude that Indiana's law is valid.

Indiana forbids recorded phone messages placed by automated dialing machines unless "(1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered." Ind. Code §24-5-14-5(b). Plaintiff maintains that the option given by subsection (b)(2) is prohibitively expensive, so that as a practical matter the statute forbids robocalls in the absence of advance consent by the recipient. We shall assume that this is so. Yet the requirement of consent is not content discrimination, so plaintiff focuses attention on three statutory exceptions:

> This section does not apply to any of the following messages:
>
> > (1) Messages from school districts to students, parents, or employees.
> >
> > (2) Messages to subscribers with whom the caller has a current business or personal relationship.
> >
> > (3) Messages advising employees of work schedules.

Ind. Code §24-5-14-5(a). The district court concluded that these exceptions do not constitute content discrimination and held that the law is constitutional. 177 F. Supp. 3d 1120 (S.D. Ind. 2016). The district court had earlier deemed the Indiana statute preempted, but we reversed, 736 F.3d 1041 (7th Cir. 2013), leaving only the constitutional challenge.

Plaintiff tells us that the statute as a whole disfavors political speech and therefore entails content discrimination, as *Reed* understood that phrase. We don't get it. Nothing in the statute, including the three exceptions, disfavors political speech. The statute as a whole disfavors cold calls (that is, calls to strangers), but if a recipient has authorized robocalls then the nature of the message is irrelevant. The three exceptions in §24-5-14-5(a) likewise depend on the relation between the caller and the recipient, not on what the caller proposes to say. Our first opinion described these exceptions as a form of implied consent, 736 F.3d at 1047, adding to the express consent exception in §24-5-14-5(b)(1). The exceptions collectively concern who may be called, not what may be said, and therefore do not establish content discrimination.

That's not quite true of §24-5-14-5(a)(3), which deals with messages "advising employees of work schedules." If plaintiff proposed to make automated calls to its own employees, it could contend that the restriction—the calls must concern work schedules—blocked it from including political speech. But, when asked at argument, counsel for plaintiff stated that the organization does not feel inhibited in communicating with its own employees—who, after all, may have given express consent under §24-5-14-5(b)(1). So if we were to hold that employers may say anything they like in automated calls to employees, this would do plaintiff no good.

Nor would an injunction striking subsection (a)(3) from the statute. Such an injunction would make plaintiff worse off by making it harder to get in touch with its staff, and plaintiff understandably has not asked for that relief. What it wants is an order preventing Indiana from enforcing §24-5-14-5(b). Potential problems with how subsection (a)(3) affects other persons do not give plaintiff standing to complain about subsection (b), its target in this suit.

Plaintiff's other line of argument is that the statute is excessive in relation to its goal of protecting phone subscribers' peace and quiet, and that the First Amendment thus requires Indiana to make an exception for political speech. That exception, if created, would be *real* content discrimination, and *Reed* then would prohibit the state from forbidding robocall advertising and other non-political speech. That's the conclusion of *Cahaly*. South Carolina's anti-robocall statute "applies to calls with a consumer or political message but does not reach calls made for any other purpose." *Cahaly*, 796 F.3d at 405. The Fourth Circuit concluded that drawing lines on the basis of the message presented, rather than (as Indiana's law does) consent by the person to be called, is content discrimination prohibited by the First Amendment. Plaintiff wants us to take a content-neutral law and make it invalid by creating message-based distinctions. That's out of the question. Indiana's law must stand or fall as written. Thus the remaining question is not whether Indiana must allow automated politicking by phone, but whether it is entitled to make advance consent (express or implied) a condition of any automated phone call, regardless of subject.

No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from fre-

quently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cell-phone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) in other ways. Federal law severely limits unsolicited calls to cell phones, 47 U.S.C. §227(b)(1)(A)(iii), and the FTC maintains a do-not-call registry for landline phones, just as the Postal Service maintains a no-junk-mail list. These devices have been sustained against constitutional challenge. See, e.g., *Rowan v. Post Office*, 397 U.S. 728 (1970) (junk-mail list); *Mainstream Marketing Services, Inc. v. FTC*, 358 F.3d 1228 (10th Cir. 2004) (do-not-call registry). Limits on unsolicited faxes have been sustained on similar reasoning. See, e.g., *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003).

But number porting has made it increasingly hard to distinguish cell numbers from landline numbers, and many callers disregard (or are exempt from) the do-not-call registry because it is expensive to check the FTC's list against lists of potential call recipients. That's why the national government and states such as Indiana have adopted limits on a particular calling technology, the robocall, that many recipients find obnoxious because there's no live person at the other end of the line. The lack of a live person makes the call frustrating for the recipient but cheap for the caller, which multiplies the number of these aggravating calls in the absence of legal controls. Anyone proposing to queue up a robocall knows its own technology, even if it does not know whether the potential recipient is a cell phone or landline phone, or is on or off the do-not-call list.

Everyone has plenty of ways to spread messages: TV, newspapers and magazines (including ads), websites, social media (Facebook, Twitter, and the like), calls from live persons, and even recorded spiels if a live operator first secures consent. Plaintiff can ask its donors and potential donors to agree to receive robocalls. Preventing automated messages to persons who don't want their peace and quiet disturbed is a valid time, place, and manner restriction. Other circuits' decisions, which we have cited, spell out the reasoning; repetition would be otiose. Because Indiana does not discriminate by content—the statute determines who may be called, not what message may be conveyed—these decisions have not been called into question by *Reed*.

AFFIRMED