**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VICTORY PROCESSING, LLC; DAVE DISHAW,

*Plaintiffs-Appellants*,

v.

TIM FOX, in his official capacity as Attorney General for the State of Montana,

*Defendant-Appellee.*

No. 18-35163

D.C. No. 6:17-cv-00027-CCL

OPINION

Appeal from the United States District Court for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted March 7, 2019
Seattle, Washington

Filed September 10, 2019

Before: Ronald M. Gould and Richard A. Paez, Circuit Judges, and Janis Graham Jack,* District Judge.

Opinion by Judge Paez

---

*The Honorable Janis Graham Jack, United States District Judge for the Southern District of Texas, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel reversed the district court's grant of summary judgment in favor of the Attorney General of Montana and remanded in an action alleging that Montana's Robocall Statute, Montana Code section 45-8-216(1)(e), which restricts automated telephone calls promoting a political campaign or any use related to a political campaign, violates the First Amendment.

The panel explained that regulating robocalls based on the content of their messaging presents a more severe threat to First Amendment freedoms than regulating their time, place, and manner. In particular, prohibiting political robocalls strikes at the heart of the First Amendment, as well as disproportionately disadvantages political candidates with fewer resources.

The panel held that plaintiff had standing to challenge the Robocall Statute. The panel noted that as an integral part of its operations, plaintiff engages in political consulting and public opinion polling primarily through the use of automated telephone calls. Plaintiff alleged that it had sustained injury, the injury was traceable to the Robocall Statute, and the relief plaintiff sought would redress its own alleged injuries.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel determined that because Montana's Robocall Statute was plainly content-based, strict scrutiny applied. The panel held that Montana demonstrated a compelling state interest—protecting personal privacy—in regulating automated telephone calls. The panel held, however, that the Robocall Statute was not narrowly tailored to further the state's interest in protecting privacy. The panel held that the statute was both underinclusive and overinclusive. It was underinclusive because by singling out only five topics of robocalling for regulation—including messages related to political campaigns—the Robocall Statute left consumers open to an unlimited proliferation of robocalls on other topics. The statute was overinclusive because robocalls related to political campaigns had not been shown to pose a threat to individual privacy. The panel concluded that the Robocall Statute's restriction on political messages did not survive strict scrutiny.

**COUNSEL**

Blake E. Johnson (argued) and Katherine J. Spohn, Bruning Law Group, Lincoln, Nebraska; James E. Brown, The James Brown Law Office PLLC, Helena, Montana; for Plaintiffs-Appellants.

Patrick M. Risken (argued), Assistant Attorney General; Timothy C. Fox, Attorney General; Office of the Attorney General, Helena, Montana; for Defendant-Appellee.

## OPINION

PAEZ, Circuit Judge:

We must decide whether Montana Code section 45-8-216(1)(e)—which restricts automated telephone calls promoting a political campaign or any use related to a political campaign—violates the First Amendment.  We hold that it does.

Although automated telephone calls, or robocalls, fall within the First Amendment's protection, they are subject to regulation—and for good reason.  In 2018, studies estimated that Americans received between 25 and 40 billion robocalls—a 45 to 60% increase from the prior year.[1]  Most of these robocalls cause only harmless annoyances.  Some are even useful, such as automated appointment or payment reminders.  At their worst, though, robocalls provide a cheap vehicle for scammers masquerading as the Internal Revenue Service, banks, or utility providers; promising nonexistent preapproved loans or loan forgiveness; and more—aiming to finagle money and sensitive information from unsuspecting consumers.  *See* Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging.*, N.Y. Times,

---

[1] *See* Kate Fazzini, *Robocalls Jumped 60 Percent in the U.S. Last Year and Scammers Are Finding More Ways to Make Money*, CNBC, Jan. 4, 2019, https://www.cnbc.com/2019/01/02/as-robo-calling-ramps-up-consumers-increasingly-wonder-why-carriers-cant-stop-scammers-from-spoofing-their-phone-numbers.html; Paige Leskin & Prachi Bhardwaj, *Americans Were Hit with 26.3 Billion Robocalls in 2018, a Whopping 46% Increase from the Year Before—Here Are Some Ways to Stop Them*, May 2, 2019, http://www.businessinsider.com/how-to-stop-robocalls-to-cell-phone-explained-2018-5.

May 6, 2018, http://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

That robocalls are subject to regulation does not remove them from the First Amendment's protection, however. We have heard numerous First Amendment challenges to laws regulating robocalls. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876–77 (9th Cir. 2014); *Bland v. Fessler*, 88 F.3d 729, 732–36 (9th Cir. 1996); *Moser v. F.C.C.*, 46 F.3d 970, 973–75 (9th Cir. 1995). We have upheld statutes that regulate the *method* rather than the content of robocalls as reasonable time, place, and manner restrictions. *See, e.g.*, *Moser*, 46 F.3d at 973–75. We have further upheld the application of state consumer protection laws to robocalls as acceptable regulation of commercial speech. *See Bland*, 88 F.3d at 738–39. We have not had the occasion to evaluate the constitutionality of a content-based regulation of robocalls until now.

Regulating robocalls based on the content of their messaging presents a more severe threat to First Amendment freedoms than regulating their time, place, and manner. In particular, prohibiting political robocalls strikes at the heart of the First Amendment, *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008), as well as disproportionately disadvantages political candidates with fewer resources. As we discuss below, Montana's content-based restrictions on robocalls cannot survive strict scrutiny. We thus reverse the district court's grant of summary judgment to the defendant, Tim Fox in his official capacity as Attorney General of the State of Montana.

## I.

In the early 1990s, the federal and state governments sought to address the widespread concern over computerized

telephone calls that were tying up phone lines, even after the recipient hung up the phone, and filling up answering machines. The federal government passed the Telephone Consumer Protection Act in 1991 ("TCPA"), 42 U.S.C. § 227, while states followed with their own enactments for addressing the problems caused by robocalls. In 1991, the Montana legislature enacted Montana Code section 45-8-216 (hereinafter "Robocall Statute"), which provides in subsection (1) that:

> (1) A person may not use an automated telephone system, device, or facsimile machine for the selection and dialing of telephone numbers and playing of recorded messages if a message is completed to the dialed number for the purpose of:
>
>> (a) offering goods or services for sale;
>>
>> (b) conveying information on goods or services in soliciting sales or purchases;
>>
>> (c) soliciting information;
>>
>> (d) gathering data or statistics; or
>>
>> (e) promoting a political campaign or any use related to a political campaign.

Although the Robocall Statute prohibits unsolicited automated calls that fall into these categories, the statute further provides in subsection (2) that "[t]his section does not prohibit the use of an automated telephone system or device if the permission of the called party is obtained by a

live operator before the recorded message is delivered." [2] *Id.* Those who violate the Robocall Statute are subject to up to a $2,500 fine. *Id.*

Victory Processing is a limited liability company formed under the laws of Michigan and headquartered in Michigan. Victory Processing offers its clients political consulting and data gathering services throughout the United States. To communicate political messages and collect public opinion data on a variety of issues, Victory Processing primarily uses automated telephone calls, or "robocalls."

Victory Processing seeks to communicate political messages and conduct public opinion polling for clients through automated telephone calls to Montana voters without using a live voice. After consulting with legal counsel, however, Victory Processing refrained from engaging in these activities in Montana because such

---

[2] Subsection 2 provides in full:

> This section does not prohibit the use of an automated telephone system, device, or facsimile machine described under subsection (1) for the purposes of informing purchasers of the receipt, availability for delivery, delay in delivery, or other pertinent information on the status of any purchased goods or services, of responding to an inquiry initiated by any person, or of providing any other pertinent information when there is a preexisting business relationship. This section does not prohibit the use of an automated telephone system or device if the permission of the called party is obtained by a live operator before the recorded message is delivered.

Mont. Code § 45-8-216(2).

activities would violate the Robocall Statute. Victory Processing, however, desires to use robocalls to engage in political speech in Montana in the future.

Alleging that Montana's Robocall Statute has limited its ability to communicate with Montana voters and chilled its speech, Victory Processing filed this suit under 42 U.S.C. § 1983 against Tim Fox in his official capacity as the Attorney General of Montana (hereinafter referred to as "Montana"). In its complaint, Victory Processing alleges that subsection (1)(e) of Montana's Robocall Statute violates the First Amendment, facially and as-applied,[3] as an invalid content-based restriction on speech. Victory Processing seeks declaratory and injunctive relief.

On cross-motions for summary judgment, the district court granted summary judgment to Montana. *See Victory Processing, LLC v. Fox*, 307 F. Supp. 3d 1109, 1121 (D. Mont. 2018). The district court expressed concern that Victory Processing had provided "only a thin basis for standing," noting that Victory Processing had not provided many details about the campaigns it sought to undertake in Montana, citing client confidentiality. *Id.* at 1113. Nonetheless, the district court concluded that constitutional standing existed and proceeded to the merits of the cross-motions for summary judgment. *Id.* at 1113–14. Concluding that the Robocall Statute was content-based, the district court applied strict scrutiny. *Id.* at 1116–17, 1119 ("There can be no doubt that Montana's robocall statute is content-based."). The district court held that Montana had a

---

[3] Victory Processing appears to have since abandoned its as-applied challenge. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived.").

compelling interest in regulating automated telephone calls to "protect[] the well-being, tranquility, and privacy of the home," and that the Robocall Statute was narrowly tailored to serve this interest. *Id.* at 1114, 1120–21. Accordingly, the district court concluded that Montana Code section 45-8-216(1)(e) survived strict scrutiny. *Id.* at 1121. Victory Processing timely appealed.[4]

## II.

We first address Montana's contention that Victory Processing lacks standing to challenge the state's Robocall Statute. Montana contends that the Robocall Statute affects the speech of Victory Processing's clients, but that Victory Processing has not demonstrated standing to sue on behalf of these third parties. We must decide this jurisdictional question before we can reach the merits.[5]

---

[4] In 2018, Victory Processing filed a similar First Amendment facial challenge to the Wyoming statute upon which the Montana Robocall Statute is based. *See* Wy. Stat. Ann. § 6-6-104**.** In that case, the District Court of Wyoming applied strict scrutiny and concluded that Wyoming's Robocall Statute was neither justified by a compelling state interest nor narrowly tailored to advance that interest. *Victory Processing, LLC v. Michael*, 333 F. Supp. 3d 1263, 1271–72 (D. Wy. 2018).

[5] Victory Processing argues that the issue of standing is not properly before us because Montana did not raise the issue through a cross-appeal. It is true that, in general, a prevailing party may not assert an argument that would modify the judgment absent a cross-appeal. *See Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007). Where standing—and thus federal court jurisdiction—is in question, however, this rule does not apply. *See, e.g.*, *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1176 (9th Cir. 1992) (finding that this court "must consider the standing issue," even absent a cross-appeal). Thus, because "[s]tanding is a necessary element of federal-court jurisdiction[,]" we address the issue. *Id*.

Article III of the Constitution limits federal jurisdiction to cases and controversies.  U.S. Const. art. III, § 2, cl. 1. "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).  A plaintiff must establish the "irreducible minimum" of standing: an "injury in fact" that is "fairly traceable" to the defendant's actions and "likely . . . [to] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and alterations omitted).  Additionally, a plaintiff's claim must be "sufficiently individualized to ensure effective judicial review." *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 866, 891 (9th Cir. 2007); *see also Warth v. Seldin*, 422 U.S. 490, 509 (1975) (holding that litigants generally cannot "assert[] the rights or legal interests of others in order to obtain relief from injury to themselves").

Montana's dispute with Victory Processing's standing is based on the premise that Victory Processing's First Amendment claim rests on the rights of its clients, rather than its own.  This premise misreads Victory Processing's allegations and ignores its ability to assert standing on its own behalf.  *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 n.7 (9th Cir. 2002) ("That [a plaintiff] is a corporation has no bearing on its standing to assert violations of the first and fourteenth amendments under 42 U.S.C. § 1983." (internal quotation marks and citation omitted)).  As an integral part of its operations, Victory Processing engages in political consulting and public opinion polling primarily through the use of automated telephone calls.  Some of this information gathering is for Victory Processing's own use while some is for the benefit of paying clients.  Because of the restriction on political robocalls, Victory Processing alleges that it has been unable

to convey political messages to voters through automated telephone calls, despite its desire to do so.

In its complaint and throughout this litigation, Victory Processing has only sought to vindicate its own First Amendment rights, not the rights of its clients. In pursuit of that objective, Victory Processing alleges that it has sustained injury; the injury is traceable to the Robocall Statute; and the relief Victory Processing seeks would redress its own alleged injuries. Victory Processing has thus demonstrated standing on its own behalf.[6] *See Lujan*, 504 U.S. at 561–62; *see also Bland v. Fessler*, 88 F.3d 729, 736–38 (9th Cir. 1996). Accordingly, we exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reach the merits of this case.

## III.

We review de novo the constitutionality of Montana's Robocall Statute. *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995). As a preliminary matter, we must decide what level of scrutiny to apply.

The level of scrutiny we apply to laws regulating speech varies depending on whether the law is content-based or content-neutral. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Content-neutral laws, on the

---

[6] Victory Processing need not wait for Montana to enforce its Robocall Statute against it in order to bring a First Amendment claim on its own behalf. *See Lopez v. Candaele*, 630 F.3d 775, 785–88 (9th Cir. 2010); *LSO, Ltd. v. Stroh*, 204 F.3d 1146, 1154–56 (9th Cir. 2000).

other hand, are subject to lesser scrutiny and can be justified as time, place, and manner restrictions.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

A law can be content-based in one of two ways.  *Reed*, 135 S. Ct. at 2227.  The most commonsense way a law can be content-based is if it distinguishes particular speech based on the topic discussed, viewpoint or idea expressed, or, more subtly, the function or purpose of the speech.  *Id.* at 2227. Such a law is content-based because it explicitly draws distinctions based on the message a speaker conveys.  *Id.* The law's purpose will not alter the level of scrutiny: "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228.

A law need not draw explicit distinctions to be content-based, however.  *Id.* at 2227.  Even a law that appears "facially content neutral" may be content-based if it cannot be justified without reference to the content of the regulated speech or if it was adopted because the government disagreed with the message the regulated speech conveyed. *Id.*  For example, in *United States v. Swisher*, we found a statute that criminalized wearing unauthorized military medals to be content-based not because it explicitly distinguished between types of speech, but rather because it could not be justified without reference to the message communicated by the regulated conduct.  811 F.3d 299, 312–13 (9th Cir. 2016).

Here, Montana's Robocall Statute is plainly content-based. Under the Robocall Statute, a person cannot use an automated telephone system "for the purpose of: (a) offering goods or services for sale; (b) conveying information on goods or services in soliciting sales or purchases;

(c) soliciting information; (d) gathering data or statistics; or (e) promoting a political campaign or any use related to a political campaign." Mont. Code Ann. § 45-8-216(1). The law explicitly targets certain speech for regulation based on the topic of that speech; accordingly, we must apply strict scrutiny. *See Reed*, 135 S. Ct. at 2227. Even if these distinctions could be substantiated with content-neutral justifications—as the district court suggested—it would not change the level of scrutiny we must apply. *See id*. at 2228. Thus, in order for the Robocall Statute's restriction on political speech to survive strict scrutiny, Montana must demonstrate that the law is justified by a compelling interest and is narrowly tailored to further that interest. *Id.* at 2231.

## A.

First, we must decide whether Section 45-6-216(1)(e) is justified by a compelling state interest. There can be no doubt that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown*, 447 U.S. 455, 471 (1980). "One important aspect of residential privacy is protection of the unwilling listener." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). Although, in many public locations, individuals are expected to avoid speech they do not wish to hear, "individuals are not required to welcome unwanted speech into their own homes and [] the government may protect this freedom." *Id.* at 485.

Congress sought to do just that when it passed the TCPA, 42 U.S.C. § 227. In the 1990s, Congress was concerned that unsolicited automated calls—predominantly to landline telephones—were invading individuals' homes and tying up their phone lines. In *Moser*, we noted the "significant evidence before Congress of consumer concerns about telephone solicitation in general and about automated calls

in particular," leading us to "conclude that Congress accurately identified automated telemarketing calls as a threat to privacy" and thus had a significant interest in restricting these calls. 46 F.3d at 974.

We have not only reaffirmed this conclusion, but we also have held that this interest in protecting privacy justifies applying the TCPA to cellular devices. We have never held that the interest in privacy ends at one's home. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876–77 (9th Cir. 2014). Indeed, cellular phones have become such critical fixtures in everyday life that they often serve as the primary phone used in the home as well as the device holding an individual's most sensitive data. *Id.*; *cf. also Riley v. California*, 573 U.S. 373, 393–96 (2014); *United States v. Cotterman*, 709 F.3d 952, 966 (9th Cir. 2013). Thus, the interest in protecting privacy applies with equal force to cellular devices.

In enacting the Robocall Statute, Montana sought to protect a person's personal privacy as well as privacy at home. The sponsor of the Robocall Statute in the Montana House of Representatives observed that automated calls had been tying up residential phone lines, answering machines, and fax machines. Proponents emphasized individuals' right of privacy and argued that "this [Robocall Statute] supports that." Montana continues to emphasize that its Robocall Statute serves a compelling interest in protecting the privacy and tranquility of its residents. Considering that this interest is "of the highest order," *Carey*, 447 U.S. at 471, and that we have recognized that robocalls directly threaten this interest, *Moser*, 46 F.3d at 974, we conclude that Montana has

demonstrated a compelling state interest in regulating automated telephone calls.**[7]**

## B.

Our inquiry does not end here, however. We must next decide whether the Robocall Statute is narrowly tailored to advance Montana's compelling interest. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485. If a less restrictive alternative would serve the state's compelling interest with the same level of effectiveness, the state must use that alternative. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). Furthermore, when the plaintiff offers "a plausible, less restrictive alternative . . . to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Id.* at 816. To meet this burden, the state must provide "more than anecdote and supposition;" it must point to evidence in the legislative record or present other evidence that demonstrates why the challenged restriction, rather than a less restrictive alternative, is necessary to further its significant interests. *Id.* at 820–22.

While narrow tailoring requires that a statute not cover *more* speech than is necessary to serve a compelling government interest, a statute can also fail strict scrutiny if it covers *too little* speech. "Underinclusivity creates a First Amendment concern when the State regulates one aspect of

---

**[7]** Victory Processing seeks to distinguish the protection of individual privacy as a *significant* governmental interest, but not a *compelling* one. This distinction is unpersuasive. We recognize the protection of individual privacy as an interest "of the highest order," and it is thus both significant and compelling. *Carey*, 447 U.S. at 471.

a problem while declining to regulate a different aspect of the problem that affects its stated interest *in a comparable way*." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1670 (2015) (emphasis in original). While we do not require the government to address all aspects of a problem in one fell swoop, an underinclusive restriction "can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 1668 (internal quotation marks omitted); *see also Reed*, 135 S. Ct. at 2231. Additionally, underinclusivity may show that the law does not in fact advance the state's compelling interest. *See Williams-Yulee*, 135 F.3d at 1668.

Although we have not yet addressed whether a content-based regulation of robocalls is narrowly tailored to protect individual privacy, the Fourth Circuit recently addressed this question in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015). There, the Fourth Circuit addressed a First Amendment challenge to South Carolina code section 16-17-446(A), which prohibited all consumer and political robocalls subject to limited exceptions. *Id.* at 402–03. Applying strict scrutiny, the Fourth Circuit held that although South Carolina's interest in protecting privacy was compelling, section 16-17-446(A) was not narrowly tailored to serve that interest. *Id.* at 405. Rather, the Fourth Circuit held that the challenged statute was both overinclusive and underinclusive. *Id.* at 406. The South Carolina statute was overinclusive because federal "[c]omplaint statistics show that unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations." *Id*. Additionally, the statute was underinclusive because it permitted "unlimited proliferation" of all robocalls that are not political or commercial. *Id.*

We similarly hold that section 45-8-216(1)(e) is not narrowly tailored to further the state's interest in protecting privacy. Notably, according to the Montana State Legislature, the privacy threat posed by robocalls relates to the methods or effects of robocalls—the fact that they tie up phone lines and fill answering machines—rather than their content. Accordingly, regulating robocalls based on their content does not address Montana's expressed concerns. Montana argues that "the method of delivery, not the message, is the target" of the Robocall Statute, emphasizing that the law does not entirely prohibit robocalls, but rather requires that a live operator announce the message for five enumerated topics. *See* Mont. Code § 45-8-216(2). Even with the live operator exception, Montana nonetheless seeks to address problems caused by robocalls by distinguishing based on the content of the calls.**[8]** *See id.*

If Montana's quarrel with robocalling is indeed with the method, rather than the content, of the calls, then its Robocall Statute is underinclusive. By singling out only five topics of robocalling for regulation—including messages related to political campaigns—the Robocall Statute leaves consumers open to an "unlimited proliferation" of robocalls on other topics. *See Cahaly*, 796 F.3d at 406. Although Montana argues that "virtually every conceivable subject of calling is covered," there are many categories of robocalls

---

**[8]** If Montana had required all robocalls to be announced by a live operator, rather than imposing this requirement based on the topic of the robocall, our analysis may be different. California, for example, has addressed similar concerns about robocalls by requiring a live operator to obtain the consent of the person they call before playing a recorded message, regardless of the content of the message. *See* California Pub. Util. § 2874. Because this regulation was content-neutral, we did not apply strict scrutiny and concluded that the statute was constitutional. *Bland*, 88 F.3d at 733, 739.

that Montana's Robocall Statute does not cover, such as those related to government services, medical information, or charitable solicitations.  Montana has offered no reason why, for example, an automated fundraising call from a political campaign is inherently more intrusive than a similar automated fundraising call from an apolitical nonprofit entity—both would tie up phone lines and answering machines in the exact same manner.  This underinclusiveness raises doubts about whether the Robocall Statute aims to address the problems caused by robocalling or instead to hinder discussion of certain topics.

Even assuming that political messages and the other four topics regulated by the Robocall Statute pose a greater threat to privacy that justifies singling them out, Montana has not presented evidence to this effect.  Indeed, available evidence does not support this conclusion.  In passing the TCPA, Congress identified that "unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations."  H.R. Rep. 102-317 at 16, 102nd Cong. (1st Sess. 1991).  More up-to-date research suggests that robocall scams pose one of the biggest threats to consumers, constituting 40% of all robocalls.  *See* Fazini, *supra*; *The FFC's Push to Combat Robocalls & Spoofing*, Fed. Commc'n Comm'n, http://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited June 1, 2019).  Robocalls related to political campaigns, by contrast, have not been shown to pose a threat to individual privacy.  By regulating categories of robocalling that have not been shown to pose a threat, the Robocall Statute is overinclusive in its efforts to further Montana's compelling interest in protecting privacy.

In regulating the content of robocalls by restricting political speech, rather than their method, in a way that is

both underinclusive and overinclusive, section 45-8-216(1)(e) is not narrowly tailored to address the State's compelling governmental interests. Thus, the Robocall Statute's restriction on political messages does not survive strict scrutiny.

## IV.

For the reasons stated above, we reverse the district court's grant of summary judgment to Fox and remand for further proceedings consistent with this Opinion.

**REVERSED** and **REMANDED.**