**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NOAH DUGUID, individually and
on behalf of himself and all
others similarly situated,
*Plaintiff-Appellant*,

v.

FACEBOOK, INC.,
*Defendant-Appellee*,

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

No. 17-15320

D.C. No.
3:15-cv-00985-JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted March 11, 2019
San Francisco, California

Filed June 13, 2019

Before:  J. Clifford Wallace, Eugene E. Siler,[*]
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

**SUMMARY**[**]

**Telephone Consumer Protection Act**

The panel reversed the district court's dismissal for failure to state a claim of an action under the Telephone Consumer Protection Act.

The panel held that the plaintiff adequately alleged that defendant Facebook, Inc., placed calls using an automated telephone dialing system, defined as "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically."

Joining the Fourth Circuit, the panel held that a 2015 amendment to the Act, excepting calls "made solely to collect a debt owed to or guaranteed by the United States," was content-based and incompatible with the First Amendment. The panel severed from the Act this "debt-

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

collection exception" as an unconstitutional restriction on speech.

**COUNSEL**

Sergei Lemberg (argued), Lemberg Law LLC, Wilton, Connecticut, for Plaintiff-Appellant.

Andrew B. Clubok (argued), Susan E. Engel, Samir Deger-Sen, Latham & Watkins LLP, Washington, D.C.; Elizabeth L. Deeley, Latham & Watkins LLP, San Francisco, California; for Defendant-Appellee.

Lindsey Powell (argued), Michael S. Raab, Mark B. Stern, Attorneys, Appellate Staff, Civil Division; Alex G. Tse, United States Attorney; Joseph H. Hunt, Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Intervenor-Appellee.

Shay Dvoretzky and Vivek Suri, Jones Day, Washington, D.C.; Steven P. Lehotsky, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

**OPINION**

McKEOWN, Circuit Judge:

Almost thirty years ago, in the age of fax machines and dial-up internet, Congress took aim at unsolicited robocalls by enacting the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. In the decades since, the TCPA has weathered the digital revolution with few amendments.

With important exceptions, the TCPA forbids calls placed using an automated telephone dialing system ("ATDS"), commonly referred to as an autodialer.

Noah Duguid claims that Facebook used an ATDS to alert users, as a security precaution, when their account was accessed from an unrecognized device or browser. For unknown reasons, Duguid received the messages despite not being a Facebook customer or user and never consenting to such alerts. His repeated attempts to terminate the alerts were unsuccessful.

Facebook challenges the adequacy of Duguid's TCPA allegations and, alternatively, claims that the statute violates the First Amendment. We conclude that Duguid's allegations are sufficient to withstand Facebook's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

As to the constitutional question, we join the Fourth Circuit and hold that a 2015 amendment to the TCPA, which excepts calls "made solely to collect a debt owed to or guaranteed by the United States," is content-based and incompatible with the First Amendment. *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (hereinafter, *AAPC*). But rather than toss out the entire TCPA—a longstanding and otherwise constitutional guardian of consumer privacy—we sever the newly appended "debt-collection exception" as an unconstitutional restriction on speech.

## BACKGROUND

### I.  The Telephone Consumer Protection Act

In what was thought to be telemarketing's heyday, Congress enacted the TCPA to "protect the privacy interests

of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. Rep. No. 102–178, at 1 (1991). With certain exceptions, the TCPA bans calls (including text messages) placed using an ATDS. 47 U.S.C. § 227(b)(1); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[A] text message is a 'call' within the TCPA.").

Since its enactment, the definition of an ATDS has remained the same: "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In contrast, the scope of the prohibition section has evolved. In 2014, when Duguid received messages from Facebook, the statute excepted two types of calls: those "made for emergency purposes" and those "made with the prior express consent of the called party." *Id.* § 227(b)(1)(A) (2010). Effective November 2, 2015, Congress added a third exception for calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588; 47 U.S.C. § 227(b)(1)(A)(iii). It is this "debt-collection exception" that Facebook contends is unconstitutional.

Two court rulings during this appeal have shifted the TCPA playing field. First, in *ACA International v. Federal Communications Commission*, the D.C. Circuit overturned aspects of several Federal Communications Commission ("FCC") rulings construing the ATDS definition. 885 F.3d 687 (D.C. Cir. 2018). Shortly thereafter, in *Marks v. Crunch San Diego, LLC*, we construed *ACA International* to wipe the definitional slate clean, so we "beg[an] anew to consider the definition of ATDS under the TCPA." 904 F.3d 1041, 1049–50 (9th Cir. 2018). To clarify any ambiguity, we

rearticulated the definition of an ATDS: "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Id.* at 1053. That definition governs this appeal.

## II. Duguid's Allegations[1]

Duguid is not a Facebook customer and has never consented to Facebook contacting his cell phone. Nonetheless, beginning in approximately January 2014, Facebook began sending Duguid sporadic text messages. The messages alerted Duguid that an unrecognized browser was attempting to access his (nonexistent) Facebook account. Each message followed a common template: "Your Facebook account was accessed [by/from] <browser> at <time>. Log in for more info."

Flummoxed, and unable to "log in for more info," Duguid responded to the messages by typing "Off" and "All off." Facebook immediately assured Duguid that "Facebook texts are now off," but the messages kept coming. Duguid also requested via email that Facebook stop sending him messages, but he received similar, automated email responses that failed to resolve the issue. The text messages continued until at least October 2014.

Duguid sued Facebook for violating the TCPA, alleging that Facebook sent the text messages using an ATDS. Specifically, he alleges that Facebook established the

---

[1] At this stage, we treat Duguid's factual allegations as true and construe them in the light most favorable to Duguid. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015), *as amended* (Apr. 28, 2015).

automated login notification process as an extra security feature whenever a Facebook account is accessed from a new device.  According to Duguid, Facebook maintained a database of phone numbers and—using a template and coding that automatically supplied the browser information and time of access—programmed its equipment to send automated messages to those numbers each time a new device accessed the associated account.  Somehow, Facebook acquired Duguid's number and (as it did with the numbers provided by its users) stored and sent automated messages to that number.

Duguid sued on behalf of two putative classes:  people who received a message from Facebook without providing Facebook their cell phone number; and people who notified Facebook that they did not wish to receive messages but later received at least one message.  Each putative class reaches back four years from April 22, 2016, when Duguid filed the amended complaint.  Duguid seeks statutory damages for each message, plus declaratory relief and an injunction prohibiting similar TCPA violations in the future.

The district court concluded that Duguid inadequately alleged that Facebook sent its messages using an ATDS—a prerequisite for TCPA liability.  After providing leave to amend, the district court dismissed the amended complaint with prejudice.

## ANALYSIS

Faithful to our unflagging duty to assess constitutional standing, we hold that Duguid adequately alleges a concrete injury in fact.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

## I.   Sufficiency of the Allegations

Facebook invites us to avoid the First Amendment challenge by affirming on the ground that Duguid inadequately alleges a TCPA violation.  According to Facebook, the equipment Duguid characterizes in the amended complaint is not an ATDS.  We conclude that *Marks* forecloses that position.

By definition, an ATDS must have the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."  47 U.S.C. § 227(a)(1)(A).  In *Marks*, we clarified that the adverbial phrase "using a random or sequential number generator" modifies only the verb "to produce," and not the preceding verb, "to store."  904 F.3d at 1052.  In other words, an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to "store numbers to be called" and "to dial such numbers automatically."[2]  *Id.* at 1053.

Duguid's nonconclusory allegations plausibly suggest that Facebook's equipment falls within this definition.  He alleges that Facebook maintains a database of phone numbers and explains how Facebook programs its equipment to automatically generate messages to those stored numbers.  The amended complaint explains in detail how Facebook automates even the aspects of the messages that appear personalized.   Those factual allegations,

---

[2] An alternative to the capacity to store numbers is the capacity "to produce numbers to be called, using a random or sequential number generator."  *Marks*, 904 F.3d at 1053; *see* 47 U.S.C. § 227(a)(1)(A).  Because Duguid adequately alleges the capacity to store numbers, we do not address whether he adequately alleges the capacity to produce.

accepted as true and construed in the light most favorable to Duguid, sufficiently plead that Facebook sent Duguid messages using "equipment which has the capacity . . . to store numbers to be called . . . and to dial such numbers."[3] *Id.*

Facebook responds that *Marks* cannot possibly mean what it says, lest the TCPA be understood to cover ubiquitous devices and commonplace consumer communications. In particular, Facebook cautions, such an expansive reading of *Marks* would capture smartphones because they can store numbers and, using built-in automated response technology, dial those numbers automatically. And if smartphones are ATDSs, then using them to place a call—even without using the automated dialing functionality—violates the TCPA. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7975 ¶ 19 n.70 (July 10, 2015); *ACA Int'l*, 885 F.3d at 704. "It cannot be the case," the D.C. Circuit has remarked, "that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact." *ACA Int'l*, 885 F.3d at 698.

As a textual anchor for narrowing *Marks*, Facebook points to the statutory requirement (repeated in *Marks*) that an ATDS store numbers "to be called." 47 U.S.C. § 227(a)(1)(A). The ATDS at issue in *Marks* was designed

---

[3] Our conclusion that Duguid's detailed factual allegations are *sufficient* says nothing about whether that level of detail is *necessary* to plead ATDS use. We also note that Facebook does not raise, so we do not consider, the requirement that an ATDS have the capacity to "dial . . . numbers *automatically*." *Marks*, 904 F.3d at 1053 (emphasis added).

to send promotional text messages to a list of stored numbers—a proactive advertising campaign. *See* 904 F.3d at 1048. Facebook differentiates its equipment because it stores numbers "to be called" only reflexively—as a preprogrammed response to external stimuli outside of Facebook's control. It urges us to cabin *Marks* as inapplicable to such purely "*responsive* messages," because numbers stored to send such messages were not stored "to be called." So construed, Facebook argues, *Marks* avoids the outcome of deeming smartphones a type of ATDS.

We cannot square this construction with *Marks* or the TCPA. *Marks*'s gloss on the statutory text provides no basis to exclude equipment that stores numbers "to be called" only reflexively. Indeed, the statute suggests otherwise: "to be called" need not be the only purpose for storing numbers— the equipment need only have the "capacity" to store numbers to be called. 47 U.S.C. § 227(a)(1). The amended complaint does not so much as suggest that Facebook's equipment could (or did) store numbers for any other reason.

Importantly, rejecting the active-reflexive distinction does not render "to be called" superfluous. Phone numbers are frequently stored for purposes other than "to be called": shops and restaurants store numbers to identify customers in their loyalty programs; electronic phonebooks store numbers for public access; data mining companies store and sell numbers; and software for customer relations management stores numbers to help businesses manage their clientele. So "to be called" has meaning without inferring a silent distinction between active and reflexive calls.

Finally, Facebook's argument that any ATDS definition should avoid implicating smartphones provides no reason to adopt the proposed active-reflexive distinction. Even if Facebook's premise has merit, the quintessential purpose for

which smartphone users store numbers is "to be called" proactively. In other words, excluding equipment that stores numbers "to be called" only reflexively would not avoid capturing smartphones.

Our reading supports the TCPA's animating purpose—protecting privacy by restricting unsolicited, automated telephone calls. *See* S. Rep. 102-178, at 1. The messages Duguid received were automated, unsolicited, and unwanted. We are unpersuaded by Facebook's strained reading of *Marks* and the TCPA.

Facebook advances a separate argument that it was entitled to dismissal on the pleadings because the TCPA excepts "call[s] made for emergency purposes." 47 U.S.C. § 227(b)(1)(A). The FCC has construed this exception broadly, to include "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). But Duguid alleges that he is not a Facebook customer and has advised Facebook of that fact repeatedly and through various means of communication. Accepting these allegations as true, Duguid did not have a Facebook account, so his account could not have faced a security issue, and Facebook's messages fall outside even the broad construction the FCC has afforded the emergency exception. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 F.C.C. Rcd. 9054, 9063 ¶ 21 n.76 (Aug. 4, 2016) ("[P]urported emergency calls cannot be targeted to just any person. These calls must be about a bona fide emergency that is relevant to the called party.").

Finally, it bears reiterating that we are considering the amended complaint at the Rule 12(b)(6) dismissal stage. Thus, we review the sufficiency of the allegations, not their accuracy or the intricate workings of Facebook's equipment,

algorithms, or notification system. Developing those factual details remains for the parties and the district court on remand.

## II. First Amendment

As a threshold matter, we confirm that Facebook has standing to challenge the constitutionality of the post-amendment TCPA. Although the TCPA violations Duguid alleges predate the debt-collection exception, which took effect in 2015, he also seeks damages on behalf of a putative class for violations that occurred in part in 2016, as well as forward-looking injunctive relief based on the post-amendment TCPA. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) ("[A]pplication of new statutes passed after the events in suit is unquestionably proper in many situations," such as "[w]hen the intervening statute authorizes or affects the propriety of prospective relief."). The class allegations and request for injunctive relief vest Facebook with a sufficient personal stake in the post-amendment TCPA to challenge its constitutionality.

### A. The Post-Amendment TCPA Is Content-Based

Turning to the merits, we first evaluate whether the TCPA is content-neutral and subject to intermediate scrutiny or content-based and subject to strict scrutiny. We have repeatedly affirmed that the pre-amendment TCPA was content-neutral and consistent with the First Amendment. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016); *Moser v. Fed. Commc'ns Comm'n*, 46 F.3d 970, 975 (9th Cir. 1995). The statute satisfied intermediate scrutiny because it was narrowly tailored to advance the "government's significant interest in residential privacy" and left open "ample alternative channels of communication." *Moser*, 46 F.3d at 974; *see*

*also Gomez*, 768 F.3d at 876–77 (recognizing that the government's interest in privacy extends beyond the household, and rejecting the argument that the statute is inadequately tailored insofar as it applies to text messages).

The debt-collection exception, which adds a purposive element, changes the framework. The TCPA now favors speech "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Because this section "target[s] speech based on its communicative content," the exception is content-based and subject to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015); *see AAPC*, 923 F.3d at 165–67.

The government's argument that the debt-collection exception is relationship-based as opposed to content-based is foreclosed by *Reed*. The "crucial first step in the content-neutrality analysis" is "determining whether the law is content neutral on its face." *Reed*, 135 S. Ct. at 2228. If it is not, the law "is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). For that reason, we "consider[] whether a law is content neutral on its face *before* turning to the law's justification or purpose." *Id.*

It is obvious from the text that the debt-collection exception's applicability turns entirely on the content of the communication—i.e., whether it is "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). The identity and relationship of the caller are irrelevant. And the government's "innocuous justification"—permitting third-party debt collectors to place calls on the government's behalf using the same means as the government itself can use—"cannot transform a

facially content-based law into one that is content neutral." *Reed*, 135 S. Ct. at 2228. We therefore conclude that the exception is content-based, without resorting to *Reed*'s second, intent-focused inquiry. *See id.* at 2227–28.

Our sister circuits' post-*Reed* decisions are consistent with our reading. There is, of course, the Fourth Circuit's decision in *AAPC*, decided shortly after argument in our case, in which the court reached the same conclusion regarding the debt-collection provision. 923 F.3d at 161 ("[W]e agree with the Plaintiffs that the debt-collection exemption contravenes the Free Speech Clause. In agreement with the Government, however, we are satisfied to sever the flawed exemption from the automated call ban."). Earlier, the Fourth Circuit also deemed content-based South Carolina's TCPA analogue because the statute applies only to robocalls "of a political nature" or made "for the purpose of making an unsolicited consumer telephone call." *Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015) (quoting S.C. Code § 16-17-446(A)). "Applying *Reed*'s first step," the Fourth Circuit reasoned, "South Carolina's anti-robocall statute is content based because it makes content distinctions on its face." *Id.* at 405. The Eighth Circuit likewise deemed content-based an exception to Minnesota's TCPA analogue for messages sent to solicit voluntary donations. *Gresham v. Swanson*, 866 F.3d 853, 854–55 (8th Cir. 2017) (citing Minn. Stat. § 325E.27(a)), *cert. denied*, 138 S. Ct. 682 (2018).

By contrast, the Seventh Circuit upheld Indiana's TCPA analogue, which exempted calls for "(1) Messages from school districts to students, parents, or employees[;] (2) Messages to subscribers with whom the caller has a current business or personal relationship[; and] (3) Messages advising employees of work schedules." *Patriotic Veterans,*

*Inc. v. Zoeller*, 845 F.3d 303, 304 (7th Cir.) (quoting Ind. Code § 24-5-14-5(a)), *cert. denied sub nom. Patriotic Veterans, Inc. v. Hill*, 137 S. Ct. 2321 (2017). The first and second exceptions to the Indiana statute are based on the relationship between caller and recipient, and the plaintiff did not invoke the third exception. *See id.* at 305 (suggesting in dicta that the third exception, were it invoked, is content-based). Accordingly, the Seventh Circuit upheld the Indiana statute as content-neutral and consistent with the First Amendment. *Id.* at 306 ("Indiana does not discriminate by content—the statute determines who may be called, not what message may be conveyed . . . .").

The text of the TCPA makes clear that the availability of the exception depends exclusively on the purpose and content of the call. The relationship between caller and recipient, though not coincidental, does not bear on the exception's applicability. *Reed* forbids us from imputing motives or sensibilities to Congress where, as here, its plain language is clear, and clearly content-based. 135 S. Ct. at 2228.

## B.  The Post-Amendment TCPA Fails Strict Scrutiny

Because it is content-based, the TCPA's debt-collection provision is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests."**[4]** *Reed*,

---

**[4]** We reject the government's unsupported assertion that Facebook's security messages are subject to intermediate scrutiny because they constitute commercial speech. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) ("Commercial speech is 'defined as speech that does no more than propose a commercial transaction.' . . . Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an

135 S. Ct. at 2226. More specifically, the government (and Duguid, who adopts the government's constitutional arguments) must demonstrate that the TCPA's "differentiation between [robocalls to collect a debt owed to or guaranteed by the United States] and other types of [robocalls] . . . furthers a compelling government interest and is narrowly tailored to that end." *Id.* at 2231. Importantly, we focus our analysis on the content-based differentiation—the debt-collection exception—*not* on the TCPA overall. *See id.* at 2231–32; *AAPC*, 923 F.3d at 167 ("[I]n order to survive strict scrutiny, the Government must show that *the debt-collection exemption* has been narrowly tailored to further a compelling governmental interest." (emphasis added)).

The government seriously advocates only one interest: "the protection of personal and residential privacy." This articulation is a head-scratcher, because robocalls to collect government debt are just as invasive of privacy rights as robocalls placed for other purposes. On that point, congressional findings corroborate common sense (not to mention practical experience): "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, *regardless of the content* or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(10), 105 Stat. 2394, 2394 (emphasis added). Permitting callers to collect government debt thus hinders—not furthers—the government's asserted interest. Because it "subverts the privacy protections underlying the" TCPA and "deviates from the purpose of the automated call ban," the

---

advertisement, the speech refers to a particular product, and the speaker has an economic motivation." (internal citations omitted)).

debt-collection exception is fatally underinclusive. *AAPC*, 923 F.3d at 168.

Contrasting the privacy implications of the TCPA's longstanding consent and emergency exceptions highlights this tailoring defect. Robocalls placed pursuant to consent "are less intrusive than other automated calls" because "consent generally diminishes any expectation of privacy." *Id.* at 169. So too are emergency robocalls, because they are infrequent, "protect[] the safety and welfare of Americans," and serve the public interest. *Id.* at 170. By contrast, an unconsented, non-emergency robocall thoroughly invades personal and residential privacy, whether it is placed to collect government debt or for some other purpose. The universe of otherwise illegal calls that the debt-collection exception permits—which one senator estimated to be in the tens of millions—has an outsized, detrimental impact on residential and personal privacy. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 F.C.C. Rcd. 9074, 9078 ¶ 9 & n.36 (Aug. 11, 2016). This incongruency underscores that the exception impedes, rather than furthers, the statute's purpose.

To evade this largely self-evident conclusion, the government would have us focus our analysis on the TCPA writ large rather than the debt-collection exception. It argues that the post-amendment statute, viewed holistically, remains narrowly tailored to protect personal and household privacy. This gloss-over approach is at odds with *Reed*, which directs that the tailoring inquiry focus on the content-based differentiation—here, the debt-collection exception. *See* 135 S. Ct. at 2231–32; *see also AAPC*, 923 F.3d at 167.

The government's expanded lens also fails in its objective. The post-amendment TCPA is underinclusive, in

that it excepts automated calls placed pursuant to the debt-collection exception, which are—all else being equal—every bit as invasive of residential and personal privacy as any other automated call. *See* Pub. L. No. 102-243, § 2(10), 105 Stat. at 2394. It is also overinclusive because the government—in its own words—could have accomplished the same goal in a content-neutral manner by basing the exception "on the called party's preexisting relationship with the federal government." *See Reed*, 135 S. Ct. at 2232. And the TCPA's potentially expansive application to everyday consumer communications—a small fraction of which implicate residential and personal privacy—further emphasizes its over-inclusiveness. *See ACA Int'l*, 885 F.3d at 697–99.

The government halfheartedly suggests an alternative interest: protecting the public fisc.[5] We credit this argument for candor: debt collection is unescapably the exception's main purpose—hence its inefficacy in protecting privacy. *See Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015) ("[U]nderinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes . . . ." (internal quotation marks and citation omitted)). But even assuming that protecting the public fisc is a compelling interest, the debt-collection exception is not the least restrictive means to achieve it. For one, Congress could protect the public fisc in a content-neutral way by phrasing

---

[5] The President's annual budget proposal for fiscal year 2015—the wellspring of the debt-collection exception—projected that the amendment would yield $12 million per year over the ensuing decade. *See* Fiscal Year 2015 President's Budget, at 185, *available at* https://www.govinfo.gov/content/pkg/BUDGET-2015-BUD/pdf/BUD GET-2015-BUD.pdf; Fiscal Year 2015 President's Budget: Analytical Perspectives, at 123, *available at* https://www.govinfo.gov/content/pkg /BUDGET-2015-PER/pdf/BUDGET-2015-PER.pdf.

the exception in terms of the relationship rather than content. *See Reed*, 135 S. Ct. at 2232 (noting the "ample content-neutral options" available to serve the same government interest). The government could also obtain consent from its debtors or place the calls itself. *See AAPC*, 923 F.3d at 169 n.10 (noting these possibilities); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016) ("The United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions because no statute lifts their immunity.").

We hold that the debt-collection exception is content-based and insufficiently tailored to advance the government's interests in protecting privacy or the public fisc.

### C. The Debt-Collection Exception Is Severable

Though incompatible with the First Amendment, the debt-collection exception is severable from the TCPA. *See AAPC*, 923 F.3d at 171. Congressional intent is the touchstone of severability analysis. *See Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984). Congress simplifies our inquiry when, as here, it speaks directly to severability: "If any provision of this chapter [containing the TCPA] . . . is held invalid, the remainder . . . shall not be affected thereby." 47 U.S.C. § 608. While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intent and creates a presumption of severability absent "strong evidence that Congress intended otherwise." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987).

History reaffirms what Congress said. The TCPA has been "fully operative" for more than two decades. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S.

477, 509 (2010). Then, with little fanfare, Congress appended the comparatively modest debt-collection exception as a small portion of the 2015 budget bill. The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it. *See Gresham*, 866 F.3d at 855 (severing a newly enacted, content-based exception to Minnesota's robocalling statute because "[t]he balance of the statute pre-existed the amendment, and we presume that the Minnesota legislature would have retained the pre-existing statute"); *cf. Rappa v. New Castle County*, 18 F.3d 1043, 1073 (3d Cir. 1994) ("[T]he proper remedy for content discrimination *generally* cannot be to sever the statute so that it restricts more speech than it did before—at least *absent quite specific evidence of a legislative preference* for elimination of the exception." (emphases added)).

Excising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves us with the same content-neutral TCPA that we upheld—in a manner consistent with *Reed*—in *Moser* and *Gomez*.

## CONCLUSION

Duguid adequately alleges Facebook utilized an ATDS, and the additional elements of a TCPA claim are not at issue in this appeal. We reject Facebook's challenge that the TCPA as a whole is facially unconstitutional, but we sever the debt-collection exception as violative of the First Amendment. We reverse the dismissal of Duguid's amended complaint and remand for further proceedings.

**REVERSED AND REMANDED.**